IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


FANNIE ARCHER, DEMETRIUS STRINGFELLOW,
WILMA BUTLER, STANLEY WALSH, FLOYD NELSON,
individually and on behalf of all others similarly situated                              PLAINTIFFS


v.                                                                         CIVIL ACTION NO.  3:03cv906-DPJ-JCS


NISSAN MOTOR ACCEPTANCE CORPORATION, ET AL.                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

This discriminatory lending case is before the Court on Defendant Nissan Motor Acceptance Corporation's (NMAC) motion for summary judgment.  Plaintiffs Fannie Archer, Demetrius Stringfellow, Wilma Butler, Stanley Walsh and Floyd Nelson responded in opposition and filed a motion for class certification.  The Court, having considered the parties' submissions and the relevant authorities, concludes that Plaintiffs failed to meet their burden of showing that the statute of limitations should be tolled.   Defendant's motion is therefore granted.

I.      Facts/Procedural History

This action arises from a common automobile industry lending practice wherein lenders, such as NMAC, provide on-site financing for automobiles purchased from car dealers. Dealership personnel act as intermediaries by taking information from the customer, passing it on to NMAC, and conveying NMAC's response back to the customer.  The customer does not meet with or discuss his or her request for credit with NMAC.

NMAC makes its decision regarding the customer's creditworthiness, advises the dealership of the interest rate at which it is willing to finance the customer's purchase, and

authorizes the dealership to complete the loan transaction on its behalf. Unknown to the customer, the dealership receives a financial benefit by closing the loan at an interest rate that is higher than the lowest rate for which the customer qualifies. Plaintiffs assert that this practice discriminates against African Americans by charging interest rates that are higher on average than the rates offered to white purchasers.

Each plaintiff financed a vehicle with NMAC between 1993 and 1996 at interest rates that ranged from 17.90% to 18.90%. Each plaintiff testified that dealership personnel told them that they were receiving the "best" interest rate available and that they would not have financed their cars with NMAC but for this alleged misrepresentation. On December 26, 2002, six years after the last loan transaction, Plaintiffs filed suit asserting discrimination claims under the Equal Credit Opportunity Act (ECOA) in addition to state law claims of fraud, negligent misrepresentation, negligent supervision, violation of the Mississippi Unfair and Deceptive Practices Act, Miss. Code Ann. § 75-2-4-5, and conspiracy.

II.    Analysis

NMAC argues that all of Plaintiffs' claims are time-barred. However, Plaintiffs maintain that (1) their ECOA claims survive because the applicable statute of limitations was tolled by the discovery rule and (2) their state law claims are timely because NMAC fraudulently concealed their claims.

    A.    The ECOA

The ECOA prohibits discrimination in borrowing and credit transactions on the basis of race (among other things). 15 U.S.C. § 1691(a) (2004). The statute contains a general two-year

statute of limitations which runs from the date the statute is violated with an additional year for violations that are discovered as a result of government enforcement proceedings.[1]

Because Plaintiffs completed their loans with NMAC well over two years before bringing this action, their claims are time-barred under the ECOA's general limitations period and the provision for the additional year is inapplicable. Plaintiffs contend, however, that their claims are subject to tolling due to the discovery rule.

Under an injury discovery accrual rule, the clock starts when a plaintiff knows or should have known of his injury. *Rotella v. Wood*, 528 U.S. 549, 553, 120 S. Ct. 1075, 1080 (2000). The ECOA does not contain a general discovery rule. Accordingly, the Court must interpret the statute to determine whether Congress nevertheless intended such a rule. *See United States v. Flores*, 135 F.3d 1000, 1003 (5th Cir. 1998) ("It is axiomatic that the touchstone of statutory construction is legislative intent."). As "in all cases involving statutory construction, our starting point must be the language employed by Congress, . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233 (5th Cir. 2007) (quoting *INS v. Phinpathya*, 464 U.S. 183, 189, 104 S. Ct. 584, 78 L. Ed. 2d 401 (1984) (quotation marks and citations omitted)).

---

[1]The relevant text states:

> No such action shall be brought later than two years from the date of the occurrence of the violation, except that - (1) whenever any agency having responsibility for administrative enforcement under section 1691c of this title commences an enforcement proceeding within two years from the date of the occurrence of the violation, (2) whenever the Attorney General commences a civil action under this section within two years from the date of the occurrence of the violation, then any applicant who has been a victim of the discrimination which is the subject of such proceeding or civil action may bring an action under this section not later than one year after the commencement of that proceeding or action.

15 U.S.C. § 1691e(f).

In this case, review of the plain meaning of the statute's language reveals no general discovery rule.

The only way to find Congressional intent to apply the discovery rule to the ECOA is through intrinsic or extrinsic aides of construction. Some courts have inferred congressional intent to include a general discovery rule (in other statutes) "when a statute is silent on the issue." *Rotella*, 528 U.S. at 555, 120 S. Ct. at 1081. However, the United States Supreme Court has not adopted such a *per se* rule of construction. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 27-28, 122 S. Ct. 441, 446 (2001) ("[B]eyond doubt, we have never endorsed the . . . view that Congress can convey its refusal to adopt a discovery rule only by explicit command, rather than by implication from the structure or text of the particular statute.").

In the present case, the statute is not completely silent on the tolling issue due to the one year tolling period for claims subject to administrative enforcement. In *Andrews*, the Supreme Court faced a similar issue concerning the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* (1994). Section 1681p of the FCRA provides a two-year statute of limitations along with tolling for discovery of misrepresented facts.[2] Although the language of the FCRA differs from that of the ECOA, the provisions are similar, and the Court's analysis in *Andrews* applies with equal force to the ECOA. According to the Supreme Court:

> Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a

---

[2]Section 1681p states:

An action to enforce any liability created under [the Act] may be brought ... within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under [the Act] to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under [the Act], the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

> contrary legislative intent. Congress provided in the FCRA that the two-year statute of limitations runs from "the date on which the liability arises," subject to a single exception for cases involving a defendant's willful misrepresentation of material information. The most natural reading of § 1681p is that Congress implicitly excluded a general discovery rule by explicitly including a more limited one.

*Andrews,* 534 U.S. at 28, 122 S. Ct. at 447 (internal citations and quotations omitted). The Court further observed: "We doubt that Congress, when it inserted a carefully worded exception to the main rule, intended simultaneously to create a general discovery rule that would render that exception superfluous." 534 U.S. at 33, at 122 S. Ct. 450. In other words, the Court in *Andrews* invoked the cannon "*expressio unius est exclusio alterius*" (the expression of one thing is the exclusion of another). *Id.* (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). The same logic applies to Congress' decision to include an exception to the two-year statute of limitations under the ECOA and omit a general discovery rule. Had Congress desired a general discovery rule, it could have easily included such language.

Another well known rule of statutory construction applied in *Andrews* (and applicable here) is that courts must avoid a reading which renders some words altogether redundant or superfluous. *See United States v. Menasche*, 348 U.S. 528, 538-539, 75 S. Ct. 513, 519-520, 99 L. Ed. 615 (1955). *Andrews* noted: "At least equally telling, incorporating a general discovery rule into § 1681p would not merely supplement the explicit exception contrary to Congress' apparent intent; it would in practical effect render that exception entirely superfluous in all but the most unusual circumstances." 534 U.S. at 29; 122 S. Ct. at 447. In this case, Congress provided a limited tolling mechanism under § 1691e(f) that would be nullified in many instances

by a general discovery rule. Simply put, had Congress intended a general discovery rule, there would be no need for § 1691e(f). As such, the Court concludes that the one-year tolling provision reflects Congress' intent to exclude a general discovery rule from the ECOA.

Extrinsic evidence further supports this construction. Although the Court finds no need to review the legislative history because the statute's language is not ambiguous, *Toibb v. Radloff*, 501 U.S. 157, 162, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991), the history reflects no intent to imply a general discovery rule.

As originally enacted, the ECOA provided that actions must be brought no later than "one year from the date of the occurrence of the violation." In 1976, Congress amended the ECOA to increase the statute of limitations from one to two years and to add the limited exception for claims discovered as a result of enforcement actions brought by administrative agencies and the Attorney General. Several courts have examined the following language from the Senate report that accompanied the 1976 amendments to the ECOA:

> The Committee also recommends a change in the statute of limitations applicable to actions brought under this Act. The present one-year limitation is, we believe, too short a period of time for violations of antidiscrimination legislation. The development and investigation of the necessary facts-especially in the case of agency or Attorney General actions- may require more than a year. *Discriminatory practices, unlike violations of Truth in Lending, are not apparent from the face of particular documents or contracts. The Committee therefore recommends that the statute of limitations be extended to two years*. In addition, where an agency or [A]ttorney General action has been commenced within two years of a violation, and where *it is likely that individual applicants may only learn of potential violations through publicity surrounding the government's action*, we believe the affected applicant should have a reasonable additional time to bring his or her private action. The bill therefore permits private actions to be brought within one year after the commencement of a government action where both involve the same conduct.

S. Rep. No. 94-589, at 14 (1976), *reprinted in* 1976 U.S.C.C.A.N. 403, 416 (emphasis added) (cited in *Farrell v. Bank of New Hampshire-Portsmouth*, 929 F.2d 871, 874 (1st Cir. 1991); *Claybrooks v. Primus Auto. Fin. Serv., Inc.*, 363 F. Supp. 2d 969, 976-77 (M.D. Tenn. 2005)). When amending the ECOA in 1976, Congress recognized the potential difficulty in discovering ECOA violations. Yet, its remedy did not include a general discovery rule. This was Congress' decision to make, and the Court will not infer a different intent.

Finally, this Court is not the first to consider the issue. In *Mays v. Buckeye Rural Electric Co-op., Inc.*, 277 F.3d 873, 879 (6th Cir. 2002), the court held:

> Courts construing the ECOA's limitations period have concentrated their attention on the discriminatory conduct giving rise to a statutory or regulatory claim. *See, e.g., Ramsdell v. Bowles*, 64 F.3d 5, 9 (1st Cir. 1995); *Farrell v. Bank of N.H.-Portsmouth*, 929 F.2d 871, 873-74 (1st Cir. 1991); *Riggs Nat'l Bank of Wash., D.C. v. Webster*, 832 F. Supp. 147, 151 (D. Md. 1993); *Stern v. Espirito Santo Bank of Fla.*, 791 F. Supp. 865, 868-69 (S.D. Fla. 1992). The general thrust of these cases, as stated by the Supreme Court of Iowa, is: "The statute's focus is upon the time of discriminatory actions, not at the time at which the consequences of the action become painful." *Marine Am. State Bank of Bloomington, Ill. v. Lincoln*, 433 N.W. 2d 709, 712 (Iowa 1988) (citing cases interpreting federal employment discrimination laws).

(cited with approval in *Anderson v. General Motors Acceptance Corp.*, No. 4:03cv311-MB, 2006 WL 1976010, (N.D. Miss. July 12, 2006) (finding no discovery rule for ECOA claim) and *Claybrooks*, 363 F. Supp. 2d at 976-77 (same)).[3] The Court finds these cases to be far more persuasive than the cases Plaintiffs rely upon, *Jones v. Ford Motor Credit*, No. 00CIV8330(LMM), 2002 WL 88431 (S.D.N.Y. July 22, 2002) and *Jones v. Citibank,* 844 F.

---

[3]The Court rejects Plaintiffs' argument that *Claybrooks* does not address fraudulent concealment and is therefore distinguishable.

Supp. 437 (N.D. Ill. 1994), neither of which examines the amendments to the ECOA or the United States Supreme Court's decision in *Andrews*.

While there is no disputing the fact that race based discriminatory lending practices are patently unlawful and impermissible, the issue before the Court is timeliness. Congress failed to adopt a general discovery rule under the ECOA, and Plaintiffs' ECOA claims, filed as much as nine years after the contracts were signed, are time-barred.[4]

B.     State Law Claims

1.     Fraudulent Concealment

Plaintiffs admit that their state law claims are subject to the three year statute of limitations found in § 15-1-49(1) of the Mississippi Code. They contend, however, that "fraudulent concealment, i.e. affirmative misrepresentations made to the Plaintiffs" tolled the statute until they discovered their claims.

Plaintiffs are correct that "[c]laims asserted three years after their accrual may be actionable if they were fraudulently concealed and plaintiffs could not discover them with reasonable diligence. In that event, the limitations period begins to run when the claims are discovered." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463 (5th Cir. 2003), *cert denied*, 546 U.S. 813 (2005). This rule is codified in Mississippi Code § 15-1-67, which provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

---

[4]Plaintiffs alternatively argue that the statute should be tolled due to fraudulent concealment. Plaintiffs offer no authority for this argument which conflicts with the Court's construction regarding a discovery rule under the ECOA. Nevertheless, even assuming *arguendo* that tolling would apply in the context of the ECOA, the Court finds no fraudulent concealment for the reasons stated in the following section of this memorandum.

The burden is upon Plaintiffs to prove that the statute of limitations should be tolled. *Gulf Nat'l Bank v. King*, 362 So. 2d 1253, 1255 (Miss. 1978), *Hall v. Dillard*, 739 So. 2d 383, 387-88 (Miss. Ct. App. 1999). Thus, to establish fraudulent concealment in this case, Plaintiffs must prove two things: 1) that Defendants engaged in an affirmative act of concealment; and 2) that Plaintiffs acted with due diligence to discover their claims but were unable to do so. *See Robinson v. Cobb*, 763 So. 2d 888 (Miss. 2000). Plaintiffs have failed in both respects.

Plaintiffs first fail to show an affirmative act of fraudulent concealment. In *Ross*, the Fifth Circuit Court of Appeals explained that "Mississippi law is unambiguous. Pursuant to § 15-1-67, Plaintiffs were required to prove an affirmative act of fraudulent concealment *post-completion* of the [fraudulent act] in order to toll the statute of limitations." *Ross*, 344 F.3d at 464 (emphasis added) (citing *Stephens v. Equitable Life Assurance Soc'y of the U. S.*, 850 So. 2d 78, 81 (Miss. 2003); *Reich v. Jesco, Inc.*, 526 So. 2d 550 (Miss. 1988)). In other words, a plaintiffs may not merely point to an initial fraudulent statement made at the time they signed the contract. To survive summary judgment, they must create a question of fact with respect to an affirmative post-sale act. Here, no such act is even alleged. Instead, Plaintiffs argue that fraudulent concealment occurred when they were allegedly told their rate was the "best" rate. These same representations form the basis of their fraud claim.

Because Plaintiffs allege that the fraudulent concealment occurred concurrently with their transactions, they have failed to make this threshold showing. The statute for Plaintiffs' claims expired three years after they signed their car loan agreements. *See Ishee v. Liberty Nat. Life Ins.*

*Co.*, No. 2:05cv129-KS-MTP, 2006 WL 2524217, *3 (S.D. Miss., August 30, 2006); *Ross*, 344 F.3d at 364.[5]

Plaintiffs have likewise failed to present evidence of "due diligence" in their investigation of the facts which give rise to their claims. Again, the alleged fraudulent statements occurred when dealership personnel told Plaintiffs that they were receiving the "best" rates. With the sole exception of Plaintiff Demetrius Stringfellow, Plaintiffs' own depositions demonstrate that they doubted the truth of the statements before agreeing to the loan's terms. Plaintiffs testified as follows:

**Floyd Nelson:**

Q. Why did you think it was too steep, did you think the bank had a lower rate?
A. As a matter of fact, I knew they had a lower rate. Because I had been dealing with the bank. . . . that's the way I knew that was outrageous.

**Wilma Butler:**

Q. Okay Did you have any discussions with the finance manager about the interest rate?
A. I'm sure I did.
. . .
Q. Okay. And did you compare the rate to, say the rate you were paying on your daughter's loan at the credit union?
A. Exactly
Q. You did?
A. Yes.
Q. Okay. And what was the rate you were paying at the credit union, do you recall?
A. It wasn't 18 percent.
Q. Was it less than that?

---

[5]Because Plaintiffs fail to establish a post-completion act of concealment, it is not necessary to address the alleged concealment itself. Nevertheless, the Court finds that merely telling a customer that they are receiving the "best" deal cannot as a matter of law constitute an act of fraudulent concealment. Such puffing is commonplace, and the terms of the deal are not hidden from view. *See Anderson v. General Motors Acceptance Corp.*, 476 F. Supp. 2d 624, 626 (N.D. Miss. 2007).

A. Yes, it was
. . .
Q. Okay. Well, did you ask the dealer whether they would give you a lower rate?
A. I can't remember, but I'm sure I did.
Q. Okay. Did you satisfy yourself that this was as low as you could get the dealer to go?
A. He said it was.
Q. Okay. Did you believe him?
A. I really can't remember, but I grant you, I didn't believe what he said.
Q. I'm sorry?
A. I probably did not believe what he said.

**Stanley Walsh**

A. He told me how much I was going to pay a month. He showed me some papers with the price that I could finance on.
Q. Okay.
A. And I was like, that's kind of steep for a used car.

**Fannie Archer**

Q. Okay. Did you discuss that rate with the finance person.
A. I thought it was a little high, but they said that was, you know, the best they could give me.
Q. Okay. Why did you think it was high?
A. Well, with the finance - - the ratio of the finance charge to the amount of finance is almost - - was more than half. So I thought that was high.
. . .
Q. So you said the finance person "this seems too high?"
A. "This seems a little high, you know is this the best?" And they said that was the best, so I just accepted it.
Q. Okay. So you accepted it. Did you believe them?
A. I didn't really believe them, but you know, I went on and accepted it.[6]

Fraudulent concealment applies only after a plaintiff shows that he or she failed, despite the exercise of due diligence, to discover the facts that form the basis of his or her claim. Plaintiffs need not have actual knowledge of the facts before the duty of due diligence arises;

---

[6] Although Mr. Stringfellow's deposition did not reflect the same level of doubt, he has offered no proof that he could not have discovered that his rate was not the "best," and he too fails to demonstrate an affirmative act of concealment.

11

rather, knowledge of certain facts which are "calculated to excite inquiry" give rise to the duty to inquire. *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1031 (N.D. Miss. 1993). Here, the basis of Plaintiffs' claim is that the interest rate charged was not the "best" available to them. However, it is obvious that Plaintiffs could have secured a car loan with better terms, that Plaintiffs knew the rates they were offered were high, and that Plaintiffs accepted these terms without inquiry, much less reasonable inquiry.

For these reasons, the Court has little difficulty finding that Plaintiffs have not established the fraudulent concealment of their claims. However, the inquiry does not end there. Plaintiffs further argue that the discovery rule applies in cases of fraud, relying on *Margolies v. Deason,* 464 F.3d 547 (5th Cir. 2006). While this case applied Texas law and is therefore of little value, the issue nevertheless requires further review and touches on a somewhat fuzzy area of Mississippi law.

        2.        Discovery Rule

The general discovery rule is codified in § 15-1-49 of the Mississippi Code and states: "In actions for which no other period of limitation is prescribed and *which involve latent injury or disease*, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49 (emphasis added). This case does not relate to a latent injury or disease. The injury (having been charged an interest rate that was not the best) occurred on the date Plaintiffs signed the contracts, and the terms of the deal were clearly stated and well known.

Although the statutory discovery rule has no application, Mississippi has applied a discovery rule when "the plaintiff will be precluded from discovering harm or injury because of

the secretive or inherently undiscoverable nature of the wrongdoing in question," or "when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act."  *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788, 794 (Miss. 1998).

The Mississippi Supreme Court examined this rule in the context of a legal malpractice and fraud claim in *Channel v. Loyacono*, 954 So. 2d 415 (Miss. 2007).  There, two Mississippi attorneys were sued by their clients for malpractice in the course of negotiating settlements.  The court explained that the "secretive or inherently undiscoverable" standard applies "where there is some piece of physical evidence that is the subject of the test."  *Id*. at 421 (citing *Staheli v. Smith*, 548 So. 2d 1299, 1303 (Miss. 1989)).  Because there was no allegation related to physical evidence in *Channel*, the court focused on the layman standard and noted a layman's inability to detect malpractice by his or her attorneys.  *Id*. at 421.  Accordingly, the court held that the statute began to run when the plaintiffs had notice of the alleged wrongdoing, but also found that many of the plaintiffs had such notice due to their admitted suspicions.  *Id*. at 422.

In *Stephens v. Equitable Life Assurance Society of United States*, 850 So. 2d 78 (Miss. 2003), plaintiffs alleged that they had been mislead by their insurance agents' representations regarding obligations to pay future premiums in a vanishing premiums case.  There, the Mississippi Supreme Court held that the plaintiffs' obligations, which were spelled out in the contract, contradicted the representations.  *Stephens* cited *Dunn v. Dent*, 153 So. 798 (Miss. 1934), where the grantors of a warranty deed allegedly misrepresented the amount of land conveyed.  The court held that "the purchaser's right of action for such deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud . . . ."  *Dunn*, 153 So. at 798 (cited in *Stephens*, 850 So. 2d at 83).  In both of these cases,

the plaintiffs were on notice of their claims because proof of the alleged misrepresentation was apparent from the face of the contract. Accordingly, *Stephens* held that the statute began to run when the plaintiffs signed the contracts. 850 So. 2d at 83.

Here, the question is whether Plaintiffs were on notice of their state law claims at the time they were told that their rates were the "best" available.[7] First, the rate paid was fixed and reflected in the terms of the contract. There was nothing "secretive or inherently undiscoverable," and there was no undiscoverable physical evidence of the sort that would generally trigger that prong of the discovery rule. *Channel*, 954 So. 2d at 421. Second, it is not "unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Id*. The Court is willing to make an *Erie* guess that Mississippi would not adopt a discovery rule in the context of sales puffing.

The facts here are different from *Channel* where a laypersons were not expected to know that their attorneys mishandled their cases. In contrast, laypersons routinely conduct arms-length transactions with merchants and are well equipped to comparison shop and weigh the veracity of the sales pitch. *See Baldwin,* 32 F. Supp. 2d at 898. ("As a consumer, Baldwin could not reasonably be expected to assume that the resulting deal would be 'the best possible' arrangement without doing her homework."). A contrary ruling would create a significant loophole in Mississippi's law on statutes of limitations and allow any customer with "buyer's

---

[7]Plaintiffs also suggest that the dealerships should have disclosed the nature of the arrangement with NMAC, but the ECOA claims are time-barred and the dealerships were under no duty to tell the Plaintiffs that they were making a profit on the transactions. *See Gholston v. Ford Motor Credit Co.,* No. 4:04cv265-D-B, 2005 WL 2254075, *2 (N.D. Miss. September 14, 2005) ("Each Plaintiff's contract disclosed the finance charge and interest rate that was being charged, and that is a sufficient disclosure under Mississippi law."); *Baldwin v. Laurel Ford Lincoln-Mercury, Inc*., 32 F. Supp. 2d 894, 899 (S.D. Miss. 1998) ("[D]efendants had no duty under Mississippi law to disclose the terms of the assignment or the division of proceeds. . . .") (citing *Guastella v. Wardell*, 198 So. 2d 227, 230 (Miss. 1967); *McMahon v. McMahon*, 157 So. 2d 494, 499 (Miss. 1963)).

remorse" to research their purchases and sue years after the sale because they were disingenuously told it was the best deal. Finally, with the notable exception of Mr. Stringfellow, each Plaintiff admitted that he or she doubted the veracity of the representations. Some actually knew the rate was high because they had spoken with other lenders. In this way, the case is like *Channel*, where the Mississippi Supreme Court started the statutory clock from the date that the plaintiffs developed doubts and were on notice of the possible injury. *Channel,* 954 So. 2d at 422.

Regardless of what Plaintiffs were told, the terms of the car loans were apparent on the face of the loan documents and with due diligence each could have easily determined that they had not been offered the "best" rate. Neither the discovery rule nor the doctrine of fraudulent concealment tolled the statute of limitations.

### 3. Plaintiffs' Claims

Finally, even if a discovery ruled applied, and even if one or more of the Plaintiffs could employ the rule, their state law claims would nevertheless fail on substantive grounds. Litigation concerning auto loans is not new, and federal courts interpreting Mississippi law have repeatedly rejected the very same causes of action asserted in this Complaint. *See Anderson*, 476 F. Supp. 2d at 626 (dismissing claims of fraud, violations of Mississippi consumer fraud statutes and negligent misrepresentation where plaintiffs were told interest rates were "the best a particular customer could receive"); *Gholston,* 2005 WL 2254075 (finding that dealer's sale of loans and receipt of commission was "lawful" and dismissing claims of suppression of material facts, fraud, negligent misrepresentation, civil conspiracy, unjust enrichment, breach of duty of good faith and fair dealing, and breach of fiduciary duty); *Davis v. General Motors Acceptance Corp*.,

406 F. Supp. 2d 698 (N.D. Miss. 2005); *Baldwin*, 32 F. Supp. 2d at 899-90 (dismissing claims of breach of fiduciary duty, covenant of good faith and fair dealing, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission, the Truth in Lending Act, 15 U.S.C. §1601, *et seq*, fraud, and others).

Because Plaintiffs' claims are time-barred, there is no need for detailed discussion regarding the applicable substantive law.  Nevertheless, the Court notes that Defendants have well addressed each claim, and further finds the reasoning of the above cited cases persuasive and completely applicable to Plaintiffs' state law claims.  As noted, the Court has not reached the merits of the racial discrimination claims under the ECOA because those claims are time-barred.

III.    Conclusion

The Court finds that Defendant's motion for summary judgment is granted and Plaintiffs' motion for class certification is dismissed as moot.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 4th day of September, 2007.

                                         s/ *Daniel P. Jordan III*
                                         UNITED STATES DISTRICT JUDGE